UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRAD H. DUNLAP, JR.,                       )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )        No. 3:17-CV-64-HSM-CCS
                                            )
NANCY A. BERRYHILL,[1]                      )
Acting Commissioner of Social Security,     )
                                            )
            Defendant.                      )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgement and

Memorandum in Support [Docs. 14 & 15] and the Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 18 & 19]. Brad H. Dunlap, Jr., ("the Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner").

For the reasons that follow, the Court will **RECOMMEND** that the Plaintiff's motion be

**DENIED**, and the Commissioner's motion be **GRANTED**.

## I.      PROCEDURAL HISTORY

On July 13, 2011, the Plaintiff filed an application for supplemental security income

benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385, claiming a

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner
Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted as the Defendant in this case.

period of disability as of that date. [Tr. 36, 127A, 136]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 81]. A hearing was held on September 3, 2013. [Tr. 930-57]. In December 2013, the ALJ found that the Plaintiff was not disabled. [Tr. 57-70]. The Appeals Council granted the Plaintiff's request for review and remanded the case back to the ALJ in March 2015. [Tr. 99-102]. On July 22, 2015, the ALJ held a second hearing. [Tr. 958-77]. The ALJ issued another unfavorable decision on October 15, 2015. [Tr. 24-41]. Thereafter, the Appeals Council denied review [Tr. 6-8], making the ALJ's October 15, 2015 decision the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on February 24, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDGINS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since July 13, 2011, the application date (20 CFR 416.971 *et seq.*).
>
> 2. There was unfavorable Administrative Law Judge decision on a previous claim filed by the claimant. That decision was issued on January 16, 2008. There is new and material evidence relating to the findings in that decision.
>
> 3. The claimant's request for a subpoena(s) is denied.
>
> 4. The claimant has the following severe impairments: back disorder, knee disorder and depression (20 CFR 416.920(c)).
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

2

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except in that he cannot lift greater than twenty pounds, can engage in occasional crouching, crawling, kneeling, stooping and bending, he is able to operate hand and foot controls and push and pull at low resistance. He experiences no visual or communicative limitations. He is able to stand up to one hour at a time and can engage in unrestricted sitting. He is able to walk for up to twenty to thirty minutes at a time, with the use of a cane. He is able to understand and remember simple and detailed, but not multistep tasks, concentrate and persist for the previously described tasks with routine breaks, interact appropriately with the public, coworkers and supervisors, adapt to infrequent changes and set independent goals but cannot perform work requiring good literacy skills, i.e., he has limited literacy.

7. The claimant is unable to perform any past relevant work. (20 CFR 416.965).

8. The claimant was born on June 29, 1974 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

9. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from July 13, 2011, the date the application was filed (20 CFR 416.920(g)).

[Tr. 30-41].

### III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

4

## IV.     DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.

> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

5

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

On appeal, the Plaintiff maintains that the ALJ erred in classifying and weighing the medical opinion of treating physician Eric M. Redmon, M.D., and erred in weighing the opinions of non-treating, examining physician Lawrence Maccree, D.O., consultative examiner Darren Hunt, M.D., and non-treating, non-examining state agency physician James Gregory, M.D. [Doc. 15 at 2-9]. The Plaintiff also asserts that substantial evidence does not support the ALJ's step five finding. [*Id.* at 9-11]. In this regard, the Plaintiff claims the ALJ failed to resolve conflicts between the vocational expert's ("VE") testimony and the *Dictionary of Occupational Titles* ("DOT"), and the ALJ erred when he relied on VE testimony provided during the first administrative hearing. [*Id.* at 9-11]. The Court will address each alleged error in turn.

### A. Medical Opinions

#### 1. Treating Physician Eric M. Redmon, M.D.

The Plaintiff argues that the ALJ failed to recognize Dr. Redmon as a treating physician and compounded the error when he failed to recognize an August 19, 2013 report as a medical opinion that was subject to the treating physician rule enumerated in 20 C.F.R. § 416.927(c).

6

Dr. Redmon, who is the Plaintiff's long-time primary care physician, detailed in his report that the Plaintiff suffers from chronic back pain and associated symptoms of numbness and paresthesias. [Tr. 683]. Dr. Redmon cited to several radiology studies including a June 2010 MRI of the Plaintiff's L spine, which revealed multilevel degenerative disc disease with moderate canal stenosis and neural foraminal compromise, and a July 2012 nerve conduction study of the lower extremities, which demonstrated mild chronic left L5 radiculopathy and mild sensory axonal polyneuropathy. [*Id.*]. Lifting, bending, twisting, and walking were noted as exacerbating the Plaintiff's back pain. [*Id.*]. Dr. Redmon noted that the Plaintiff was a possible surgical candidate when he was seen at Cumberland Neurosurgery and Spine Center in 2010 but that it was concluded that surgery had the possibility of making his condition worse. [*Id.*]. Finally, Dr. Redmon concluded that the Plaintiff's pain had worsen, his medical condition, as evidenced by the foregoing radiology studies, could reasonably be expected to produce severe pain, and his condition prevented him from performing any type of full-time work. [*Id.*].

The ALJ addressed Dr. Redmon's report as follows:

> Citing chronic pain and lack of assurance that surgery would help, Dr. Eric Redmon, the claimant's current physician and pain mediation provider, opined that the claimant's conditions prevent him from performing any type of work fulltime. (See Exhibit 22F). This opinion is given no weight. It is conclusory and improper since it pertains to an issue that is reserved to the Commissioner. (See SSR 96-5p). Dr. Redmon offers no specific assessment of the claimant's capabilities upon which to base a residual functional capacity. Further, his assertion that the claimant is totally disabled by pain is not consistent with the claimant's rating of his pain at a "3" in recent treatment records.

[Tr. 39].

As an initial matter, the Court addresses whether Dr. Redmon's report constitutes a medical opinion. *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010) ("[A]

7

treating physician's opinion is only entitled to such special attention and deference when it is a *medical opinion*.") (emphasis in original); *Rivera ex rel. H.R. v. Comm'r of Soc. Sec.*, No. 3:11-CV-163, 2012 WL 3562023, at *4 (S.D. Ohio Aug. 17, 2012) ("[A]pplication of the 'treating physician rule' is contingent upon a treating physician actually giving a medical opinion."), *adopted by*, No. 3:11-CV-163, 2012 WL 3871944 (S.D. Ohio Sept. 6, 2012). The Plaintiff contends that the ALJ ignored most of the report, focusing only on Dr. Redmon's assertion that the Plaintiff's condition prevented him from working. [Docs. 15 at 4-6 & 20 at 8]. The Commissioner counters that the ALJ properly recognized that the employability of the Plaintiff is not a medical opinion and further submits that the remaining statements offered by Dr. Redmon do not constitute a medical opinion because they do not offer insight into what the Plaintiff is able to do despite his impairments. [Doc. 19 at 8-9].[2]

The Court observes that a "medical opinion" is defined as a statement from a physician, psychologist, or other "acceptable medical source," that "reflect judgments about the nature and severity of you impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairments(s), and your physical or mental restrictions." § 416.927(a)(2). However, statements that a claimant is "disabled" or "unable to work," are not considered medical

---

[2] The parties' briefs suggest some confusion as to the definition of a "medical opinion" and which version of the regulations apply given recent policy changes to how the Social Security Administration evaluates medical evidence. [*See* Docs. 20 at 5-8 and 21 at 3-5]. The Court finds that the appropriate version of the regulations that govern *all* issues raised in this case are those that were in effect on October 15, 2015, the date of the ALJ's decision. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). Accordingly, while the regulations regarding the evaluation of medical evidence have been revised, effective March 27, 2017, they are not applicable to the instant case. *See id.; Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

opinions, and, instead, are findings on issues reserved to the Commissioner. § 416.927(d)(1). Such statements are not given any special significance. § 416.927(d)(3). The ALJ need only "explain the consideration given to" the opinion, Soc. Sec. Rul. 96–5p, 1996 WL 374183, at *6 (July 2, 1996), but it "is not entitled to any particular weight," *Turner*, 381 F. App'x at 492.

The Court finds Dr. Redmon's report is a medical opinion. The Commissioner contends that a medical opinion is only "a statement about what you can still do despite your impairments." [Docs. 19 at 9 & 20 at 8]. To the contrary, a medical opinion consist of statements that "reflect judgments about the nature and severity of your impairment(s), *including* your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1) (emphasis added). Indeed, our appellate court has recognized that medical opinions are "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis.'" *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(a)(2)). Here, Dr. Redmon found, among other things, that the Plaintiff suffered from chronic back pain and associated symptoms of numbness and paresthesias that could reasonably be expected to produce severe pain; that lifting, bending, twisting, and walking exacerbated his pain; and that the Plaintiff is prevented from any type of full-time work. [Tr. 683]. While the last statement is not considered a medical opinion because it opines on an issue reserved to the Commissioner, *see* 20 C.F.R. § 416.927(d)(1), the remaining statements reflect judgments about the nature and severity of the Plaintiff's back impairment. *See Manning v. Comm'r of Soc. Sec.*, No. 2:15-CV-2316, 2016 WL 3156934, at *3 (S.D. Ohio June 7, 2016) (finding a physician's letter constituted a "medical opinion" because "the letter reflects a judgment about the nature and severity of Plaintiff's impairment and his mental restrictions by noting that Plaintiff's mental health 'significantly impacts' his residual functional capacity," it "describes Plaintiff's treatment

9

history, which included weekly appointments and [Psychosocial Rehabilitation and Recovery Center] classes," it "notes Plaintiff's symptoms consist of 'problems of motivation and mood,'" and noted "his diagnosis of 'Major Depressive Disorder, Recurrent'"), *adopted by*, No. 2:15-CV-2316, 2016 WL 4625669 (S.D. Ohio Sept. 2, 2016).

Having determined that Dr. Redmon's report is a medical opinion, the Court turns its attention to whether the ALJ recognized Dr. Redmon as a treating physician and weighed his opinion accordingly. The Plaintiff concedes that the ALJ initially referred to Dr. Redmon as the Plaintiff's "treating physician" but complains that the ALJ later referred to Dr. Redmon as the Plaintiff's "current physician" and further did not explicitly specify if he considered Dr. Redmon to be an "examining" or "treating" source. [Docs. 15 at 3 & 20 at 4-5]. The Commissioner argues that the Plaintiff's initial reference to Dr. Redmon as a treating physician sufficiently makes clear that the ALJ considered Dr. Redmon as such. [Doc. 19 at 7]. The Court agrees with the Commissioner.

In reaching this conclusion, the Court observes that not only did the ALJ reference Dr. Redmon as a treating physician, the ALJ discussed treatment records from Dr. Redmon that date from 2010 through 2013 [Tr. 36-37, 39], thereby recognizing that Dr. Redmon had an ongoing treating relationship with the Plaintiff. *See* 20 C.F.R. § 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). Nothing within the regulations suggests that the ALJ must explicitly identify Dr. Redmon as a "treating physician" or use other identifying language. Having reviewed the ALJ's decision, the Court is convinced that the decision makes clear that Dr. Redmon was properly classified as a treating physician by the ALJ.

10

Finally, the Court turns to whether the ALJ properly weighed Dr. Redmon's report. Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 416.927(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. § 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

The Plaintiff argues that the ALJ failed to adequately address Dr. Redmon's entire report, focusing instead on Dr. Redmon's conclusion that the Plaintiff is unable to perform any type of full-time work. [Docs. 15 at 4-5, 20 at 4]. The Commissioner asserts that regardless of whether weight was afforded to the entire report, the ALJ properly consider the findings therein and

11

discussed them in his decision. [Docs. 19 at 10 & 21 at 4]. The Court finds the Sixth Circuit's decision in *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 474 (6th Cir. 2012) instructive.

*Dunlap* involved the Plaintiff's appeal from the denial of benefits from a 2006 application. *Id.* at 473. In that case, Dr. Redmon issued two "medical opinions," as characterized by the Plaintiff. *Id.* at 474. The first opinion was a one-sentence assertion in which Dr. Redmon stated, "In my medical opinion, Mr. Dunlap has severe low back pain and due to his pain is unable to work." *Id.* The Sixth Circuit concluded that "the administrative law judge correctly ruled that the conclusion expressed by Dr. Redmon in his single-sentence note of May 2007 was one properly reserved to the Commissioner." *Id.* at 475. The second opinion included Dr. Redmon's "findings at length and concluded: 'Dunlap has a medical condition, confirmed by objective measurement of nerve function, that would reasonably be expected to produce severe pain. Mr. Dunlap's severe pain has also been consistent with clinical observations over an extended period of time.'" *Id.* at 475.[3] Similar to the present matter, the Plaintiff in his appeal argued that the ALJ failed to weigh Dr. Redmon's second opinion, and the parties disputed whether the opinion was a medical opinion. *Id.* at 476. Without explicitly deciding the issue of whether Dr. Redmon had issued a medical opinion, the Sixth Circuit concluded that the ALJ did not err because his decision made clear "that an explanation for his rejection [of the opinion] appears on the record." *Id.* Specifically, the ALJ's decision considered the opinion's findings, it was evident that no weight was given to the report, and the reasons for that weight were apparent. *Id.* Therefore, the Sixth Circuit concluded that the

---

[3] The Commissioner described Dr. Redmon's opinion as consisting "primarily of a restatement, often verbatim, of the underlying evidence contained in Dunlap's medical records." *Dunlap*, 509 F. App'x at 476.

ALJ's "failure to label his explanation as 'good reason' for his determination was harmless error, at most." *Id.*

Likewise, in the instant matter, while the ALJ did not explicitly assign a specific weight to Dr. Redmon's entire report, the decision makes clear that the ALJ considered the findings made therein, that some weight was given to the opinion, and "good reason" was given for that weight. Specifically, most of the report discussed the Plaintiff's treatment history and symptoms, such as the Plaintiff's diagnosis of chronic low back pain, MRI and nerve conduction test results from June 2010 and July 2012, respectively, treatment with epidural steroid injections, and suggested surgical hemilaminectomy at L5-S1, all of which the ALJ discussed and appeared to fully credit in his decision. [Tr. 35-37]. Moreover, and as observed by the ALJ, "Dr. Redmon offer[ed] no specific assessment of the [Plaintiff's] capabilities upon which to base a residual functional capacity." [Tr. 39]. Therefore, the only portion of Dr. Redmon's report that appears to be specifically discounted by the ALJ was his assertion that the Plaintiff's pain had worsened and that his pain prevented him from working.

As to Dr. Redmon's claim that the Plaintiff's pain had worsened, the ALJ explained that treatment notes demonstrated that the Plaintiff's pain significantly improved with narcotic pain medication and back injections. In this regard, the ALJ cited multiple records in which the Plaintiff reported his pain was only a "3" on a 10-point scale, that injections brought significant relief, and that the Plaintiff appeared in no acute distress, his symptoms were stable, and his gait improved. [Tr. 36-37, 39 (citing Exhibits B18F & B24F)]. An ALJ may properly discount a treating physician's opinion when the physician's own treatment notes, as well as other objective evidence in record, fails to support the physician's findings and conclusions. *See Holland v. Colvin*, No. 5:13-CV-393-JMH, 2014 WL 3439671, at *5 (E.D. Ky. July 11, 2014) ("Thus, by pointing out the

13

lack of objective medical evidence to support Dr. Dunaway's disabling opinion, the ALJ gave good reasons for rejecting his opinion and substantial evidence supports this decision."). With regard to the conclusion that the Plaintiff's condition prevented him from performing any full-time work, the ALJ properly declined to credit the assertion as it invaded the Commissioner's exclusive role in determining disability. *See* 20 C.F.R. § 416.927(d)(1), -(3).

Citing 20 C.F.R. § 416.929, the Plaintiff further argues that the ALJ did not properly evaluate the Plaintiff's pain because the ALJ's decision does not adequately discuss the number of epidural injections he received or the number of years the Plaintiff has been taking narcotic pain medication. [Doc. 15 at 6-7]. In evaluating complaints of pain, section 416.929(c)(3)(iv) states that "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms" will be considered. Importantly, there is a difference between what the ALJ must consider and what he must say in his written decision. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[An] ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)). Here, however, the ALJ not only considered, but also discussed, many treatment records pertaining to the Plaintiff's history of epidural injections and narcotic pain medication. [Tr. 35-37, 39]. Moreover, the ALJ cited to various medical records that indicated the Plaintiff's pain actually improved as a result of his injections and medication. [*Id.*]. "Notably, impairments that are controlled by medication are not disabling." *Burney v. Comm'r of Soc. Sec.*, No. 12-CV-10151, 2013 WL 1289310, at *3 (E.D. Mich. Mar. 28, 2013) (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 836 (6th Cir. 2005). While the Plaintiff cites to other treatment records that he claims the ALJ ignored, the Court finds that many of the treatment records cited by the Plaintiff pre-date

14

his alleged onset date, and the remaining records simply document when the Plaintiff received injections and what medication he was prescribed, as opposed to detailing negative side effects or other pertinent information about his treatment that may undermine the ALJ's decision. Finally, the Court observes that the ALJ also considered other evidence in evaluating the Plaintiff's pain, including the Plaintiff's daily activities, poor work history, and inconsistent statements about how far he could walk, as well as the ALJ's own observations of the Plaintiff during the hearing. [Tr. 35, 37-38]. These are appropriate factors for the ALJ to consider in evaluating the Plaintiff's complaints of pain. *See* 20 C.F.R. § 416.929(c)(3).

Accordingly, the Court finds that substantial evidence supports the ALJ's consideration of Dr. Redmon's report, and the Plaintiff's allegations to the contrary are unavailing.

### B.     Lawrence Maccree, D.O.

The Plaintiff likewise contends that the ALJ failed to adequately address Dr. Maccree's reports which, according to the Plaintiff are medical opinions, and the ALJ did not specify the weight he gave to any of Dr. Maccree's reports. [Doc. 15 at 7-8].

At the referral of Dr. Redmon, Dr. Maccree evaluated the Plaintiff's back pain. [Tr. 343-50]. In a letter to Dr. Redmon, dated November 16, 2010, that essentially reads as a treatment note entry, Dr. Maccree summarized the Plaintiff's "History of Present Illness," "Review of Symptoms," "Past Medical History," "Social History," "Medications," "Allergies," "Family History," "Radiology," "Physical Examination," and "Impression/Plan." [*Id.*]. Based upon his evaluation and examination of the Plaintiff, Dr. Maccree determined that the Plaintiff's history of injections was not precisely known and therefore recommended that an L5-S1 left epidural steroid injection be given to confirm the presence of S1 radiculopathy. [Tr. 343, 347]. In addition, he recommended that the Plaintiff be treated with the steroid Medrol Dosepak because "I do believe

15

he has real pain, most likely radicular, and this may help also in deciding whether or not he would benefit from surgical intervention as opposed to nonsurgical intervention." [*Id.*]. Finally, Dr. Maccree recommended that the Plaintiff return in two weeks following his injection. [*Id.*]. When the Plaintiff returned on December 3, 2010, Dr. Maccree noted that the injection offered two days of relief from symptoms of radicular pain which suggested that surgical intervention of the S1 nerve root was appropriate. [Tr. 343]. Dr. Maccree recommended hemilaminectomy at L5-S1 for discectomy to decompress that S1 nerve root on the left side, but the Plaintiff did not return for further treatment. [*Id.*].

The Court finds that Dr. Maccree's treatment notes do not constitute a medical opinion but essentially assess whether surgical intervention was warranted given the Plaintiff's radicular pain. While treatment notes in some cases may certainly constitute medical opinions under 20 C.F.R. § 416.927(c), in this case none of Dr. Maccree's statements "reflect judgments on the nature and severity" of the Plaintiff's impairments. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir.2009) ("Dr. McCord's responses . . . address the general relationship between Allen's spinal condition and the symptoms/limitations it may cause, rather than addressing the specific extent of Allen's limitations" and "[these] responses appear to be outside the scope of 'medical opinions' as defined in 20 C.F.R. § 404.1527(a)(2)."); *see also Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir.2007) ("Since Dr. Naum made no medical judgments, the ALJ had no duty to give such observations [about claimant's gait and ambulation] controlling weight or provide good reasons for not doing so.").

In support of the Plaintiff's argument, he cites to several observations and examination findings made by Dr. Maccree but does not explain why any of these statements or findings constitute a medical opinion. [Doc. 15 at 7-8 (citing Tr. 343, 345-47)]. For example, Dr. Maccree

16

noted that the Plaintiff's symptoms were slowly worsening and that pain kept the Plaintiff from sleeping. [Tr. 345]. These statements, however, were a recitation of the Plaintiff's subjective allegations. [*Id.*]. "[A] recitation of Plaintiff's symptoms . . . does not constitute a 'medical opinion.'" *Kurish v. Comm'r of Soc. Sec.*, No. 11-CV-15637, 2012 WL 6193890, at *9 (E.D. Mich. Nov. 6, 2012), *adopted by*, No. 11-CV-15637, 2012 WL 6192673 (E.D. Mich. Dec. 12, 2012). In addition, Dr. Maccree recounted the results of the Plaintiff's June 2010 MRI of the lumbar spine and noted that he believed the Plaintiff experienced real pain, but he did not quantify the pain in any specific terms and specifically made the observation as justification for prescribing a steroid. [Tr. 346-47]. "[M]ere observations about a claimant's condition do not qualify as 'medical opinions.'" *Terrell v. Comm'r of Soc. Sec.*, No. 12-CV-11781, 2013 WL 5178541, at *11 (E.D. Mich. Sept. 10, 2013) (citing *Bass*, 499 F.3d at 510).

Although there was no medical opinion to weigh, the ALJ properly consider Dr. Maccree's examination of the Plaintiff in accordance with statutory regulations, noting that the Plaintiff exhibited spinal tenderness with palpation, dysthesia in the left S1 distraction, intact reflexes, 4+/5 strength in the left lower extremity, positive straight leg raises, and no significant difficulty ambulating. [Tr. 36]. In addition, the ALJ observed that an epidural steroid injection at L5-S1 was given to address the Plaintiff's complaints of pain and that the Plaintiff returned the following month, stating that the injection only provided two days of relief. [*Id.*]. The ALJ noted that Dr. Maccree recommended hemilaminectomy at L5-S1, but the Plaintiff did not return for further treatment. [*Id.*]. The Court finds that the ALJ properly considered Dr. Maccree's treatment notes and credited his findings to the extent that the Plaintiff's back impairment was found to be a severe impairment that limited him to light work with additional restrictions. However, as explained above in addressing Dr. Redmon's treatment of the Plaintiff, the ALJ provided a supported and

17

reasonable basis for concluding that despite the Plaintiff's back impairment, the evidence suggested that the Plaintiff was not as limited as he alleged. Therefore, the Court finds no error in the ALJ's consideration of Dr. Maccree's treatment notes, and the Plaintiff's assertions to the contrary are not well-taken.

### 3.    State Agency Medical Consultants

The Plaintiff also argues that the ALJ improperly relied on the opinions of consultative examiner, Dr. Hunt, and non-treating, non-examining state agency physician, Dr. Greggory, because they rendered opinions without the benefit of reviewing later summited evidence. [Doc. 15 at 8-9].

Dr. Hunt performed a one-time evaluation on October 2, 2011. [Tr. 416-18]. Based on his examination and review of the Plaintiff's medical history, Dr. Hunt opined that the Plaintiff could lift 20 pounds, infrequently crouch, crawl, kneel, stoop, and bend, operate hand and foot controls, push and pull at low resistance, stand for an hour at a time, sit for any period of time, and walk for 20 to 30 minutes at a time with the use of a cane. [Tr. 417-18]. The ALJ assigned "significant weight" to the opinion, finding it to be well supported by Dr. Hunt's examination findings which included tenderness of the spine, positive straight leg raises, and difficulty ambulating and performing heel/toe walks. [Tr. 38-39].

Dr. Gregory completed a "Physical Residual Functional Capacity Assessment" on November 10, 2011. [Tr. 430-36]. Therein, Dr. Gregory opined that the Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about six hours, and sit for about 6 hours, frequently push and pull with his left lower extremity, frequently balance and climb ramps and stairs, and occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. [Tr. 432-34]. The ALJ gave "great weight" to Dr. Gregory's opinion, finding it well

18

supported by treatment records indicating mild pain as well as Dr. Hunt's examination findings. [Tr. 39].

The Court observes that it is not uncommon for state agency medical and psychological consultants to render opinions prior to the medical evidence in a case record being completed. *See e.g.*, *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) ("There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued," but "absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand."). "When an ALJ relies on a [medical] source who did not have the opportunity to review later submitted medical evidence," our appellate court "require[s] some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted).

Here, the ALJ did not exclusively rely on Dr. Hunt's or Dr. Gregory's opinions but considered a multitude of other evidence, including medical evidence, such as Dr. Redmon's treatment notes, that was generated after Dr. Hunt and Dr. Gregory issued their opinions. [Tr. 35-39]. The Plaintiff does not identify any later submitted evidence that undermines the ALJ's reliance on either doctors' opinion and only argues that Dr. Hunt, in discussing the Plaintiff's most recent MRI at the time, did not note the presence of "**Marked** foraminal narrowing present on the left side at L5-S1." [Doc. 15 at 8] (emphasis in original). However, simply because Dr. Hunt did not detail MRI results to the Plaintiff's satisfaction does not mean that he did not fully consider the radiology study or that he rendered an invalid opinion. Notably, neither Dr. Maccree nor Dr.

19

Redmon mention marked findings in discussing the same MRI [Tr. 354, 683], suggesting that the marked foraminal narrowing highlighted by the Plaintiff does not significantly impact the Plaintiff's RFC beyond the specific limitations assessed by the ALJ.

Therefore, the Court finds the Plaintiff's assignment of error in this regard is without merit.

## B. Step Five

Relying on VE testimony, the ALJ concluded that the Plaintiff could perform the jobs of hand bander, table worker/fabricator, and surveillance systems monitor. [Tr. 40-41]. The Plaintiff argues that substantial evidence does not support the ALJ's finding for two reasons. Specifically, the Plaintiff submits that the ALJ erred in his reliance on VE testimony because said testimony (1) conflicted with the *DOT* and (2) was from the first administrative hearing. [Doc 15 at 9-11].

### 1. *Conflict with the DOT*

The Plaintiff contends that two of his RFC limitations—use of a cane and limited literacy— conflict with the *DOT's* requirements of the jobs identified by the VE. [Doc. 15 at 9-10]. First, the Plaintiff submits that the *DOT* fails to take into account the occupational impact caused by the use a cane, a factor ignored by the VE and the ALJ. [*Id.* at 9]. Second, the Plaintiff complains that all the jobs require at least a Level 1[4] reading ability which conflicts with his limited literacy skills. [*Id.* at 10].

Social Security Ruling 00-4p explains that in making disability determinations, the agency relies "primar[ily] on the DOT . . . for information about the requirements of work in the national economy." 2000 WL 1898704 at *2 (2004). However, "[t]he DOT lists maximum requirements

---

[4] A "Level 1" reading ability is defined as follows: "Recognize meaning of 2,500.00 (two- or three-syllable) words. Read at rate of 95–120 words per minute. Compare similarities and differences between words and between series of numbers." U.S. Dept. of Labor, *DOT*, app. c, 1991 WL 688702 (4th ed.1991).

of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* at *3. Therefore, VE testimony "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* The ruling imposes an affirmative duty on the ALJ to ask about any possible conflicts between the VE's testimony and information provided in the DOT. *Id.* at *4. Only if a conflict is identified by the VE must the ALJ "obtain a reasonable explanation for the apparent conflict." *Id.*

In the instant case, the ALJ satisfied his affirmative duty when he instructed the VE that he must resolve any conflicts that may exists between testimony given and information contained in the *DOT*. [Tr. 952]. The VE did not relay that any conflicts existed. The fact that the Plaintiff now maintains that a conflict does exist is insufficient to establish error by the ALJ. "Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Because the VE did not identify any conflicts, the ALJ properly relied on the VE's testimony.

Furthermore, the Court notes that Plaintiff's counsel had the burden to challenge the correctness of the VE's testimony at the hearing, and his failure to do so does not create error on the ALJ's part on appeal. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) (affirming that Social Security Ruling 00-4p does not require an ALJ to investigate whether VE testimony is accurate and instead, "[t]his obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief."). Accordingly, the Plaintiff's contention that the ALJ failed to resolve conflicts between the VE's testimony and the *DOT* is not well-taken.

21

## 2.	Reliance on Testimony from First Administrative Hearing

The Plaintiff additionally maintains that the ALJ's step five finding is not supported by substantial evidence because the ALJ relied on VE testimony from the first administrative hearing. [Doc. 15 at 10-11]. The Plaintiff complains that "[t]he ALJ (without mention in his decision) cited jobs listed in the first hearing." [*Id.* at 11].

The Court finds the ALJ did not err. The pertinent regulations define evidence as "anything you or anyone else submits to us or that we obtain that relates to your claim," including "statements you or others make . . . in testimony in our administrative hearings." 20 C.F.R. 416.912(b)(1)(iii). The first administrative hearing, despite the Appeals Council's order of remand, remains part of the record, and, accordingly, the Court finds the Plaintiff's argument that notice was required before the ALJ could rely on said testimony meritless. *See Paul v. Comm'r of Soc. Sec.*, No. 2:13-CV-14911, 2015 WL 1299980, at *2 (E.D. Mich. Mar. 23, 2015) (holding that the ALJ, following the Appeal Council's order of remand, did not err when he relied on VE testimony provided during the first hearing). Furthermore, the Plaintiff has not cited to any controlling case law, regulation, or agency ruling that precluded the ALJ from considering said testimony other than Hearings, Appeals and Litigation Law Manual[5] I-2-6-58(c) and I-2-1-20, neither of which are accompanied by an explanation from the Plaintiff as to their applicability and which the Court nonetheless finds are inapplicable to the instant matter.

In the first administrative hearing, the ALJ asked the VE whether work existed in the national economy for a hypothetical individual with the same RFC as the Plaintiff. [Tr. 956]. The

---

[5] The Hearings, Appeals and Litigation Law Manual provides non-binding guidance to adjudicators. *Lasorda v. Comm'r of Soc. Sec.*, No. 1:16-CV-435, 2017 WL 1276760, at *7 (W.D. Mich. Apr. 6, 2017)

VE responded in the affirmative and identified the jobs of hand bander, table worker/fabricator, and surveillance systems monitor, as well as the number of positions that existed locally and nationally for each job. [Tr. 956]. "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). Therefore, the Court finds the Plaintiff's assignment of error in this regard is not well-taken.

## VI.   CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[6] the Plaintiff's Motion for Summary Judgment [**Doc. 14**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] be **GRANTED**.

Respectfully Submitted,

        s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).